UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

FILED
CLERK
10/27/2026 2:34 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

Plaintiff,

-against-

**ORDER**
23-CR-377 (JMA)

MICHAIL MCKEN,

Defendant.
-------------------------------------------------------------------X

**AZRACK, United States District Judge:**

On May 13, 2025, this Court denied the motion of defendant Michail McKen ("Defendant" or "McKen") in which he moved for acquittal under Federal Rule of Criminal Procedure 29 or for a new trial under Rule 33. (ECF No. 121.) As relevant here, the Court found that the evidence was sufficient for the jury to convict the Defendant on Counts Three and Five of the Indictment, which charged him with Sex Trafficking in violation of 18 U.S.C. § 1591(a)(1). (Id.) Defendant has moved for reconsideration of that decision.[1] (Mot., ECF No. 133; see Amended Mot., ECF No. 135; Gov. Opp., ECF No. 137; Def. Reply, ECF No. 139). For the reasons stated below, Defendant's motion is DENIED.

## I. BACKGROUND

The Court presumes familiarity with the background of this case and the Court's May 13, 2025 Order, and sets forth only the facts relevant to Defendant's motion.

On September 19, 2023, a grand jury charged McKen with six counts in an Indictment, including three counts of Sex Trafficking, in violation of 18 U.S.C. § 1591(a)(1) (Counts I, III, and V), and Interstate Prostitution in violation of 18 U.S.C. § 2242(a) (Counts II, IV and VI),

---

[1] The Court grants Defendant's motion to amend and accepts the Amended Motion filed on May 7, 2026 as the operative motion. (See ECF No. 135.)

pertaining to three victims. (ECF No. 1.) Counts I and II pertained to conduct involving Charity (identified in the Indictment as Jane Doe #1) from April 2019 to December 2019; Counts III and IV pertained to conduct involving Amanda (identified in the Indictment as Jane Doe #2) from September 2019 to October 2019; and Counts V and VI pertained to conduct involving Ella (identified in the Indictment as Jane Doe #3) from July 2019 and January 2022. (Id.) After a jury trial that concluded on November 12, 2024, McKen was found guilty on Counts III–VI of the Indictment, pertaining to conduct involving Amanda and Ella. (See ECF Nos. 94, 105.) The jury did not reach a verdict as to Counts I and II concerning Charity. (Id.)

On March 21, 2024, Defendant moved to set aside the verdict under Rule 33 and for a judgment of acquittal under Rule 29. (ECF No. 116.) As relevant here, in his motion, Defendant argued that the evidence at trial was insufficient to convict him on Counts III and V of the Indictment, which charged him with sex trafficking in violation of 18 U.S.C. § 1591(a)(1).[2] (Id.) Specifically, he argued that the evidence was insufficient to find that he coerced Amanda and Ella to engage in commercial sex acts, asserting that they "were not truly coerced into working in the sex trade, and that they did so for financial and other motives rather than because Mr. McKen forced them." (Id. at 13.)

In an order dated May 13, 2025, the Court rejected Defendant's arguments and found that the evidence at trial, taken as a whole, was sufficient to find that the Defendant coerced Amanda and Ella into engaging in commercial sex. (ECF No. 121.) With respect to Amanda, the Court found that the trial evidence was sufficient to establish "that McKen threatened and exploited Amanda's drug addiction and financial situation to coerce her into prostitution." (Id. at 18.) The Court cited Amanda's testimony that "McKen not only withheld drugs from Amanda, leading to

---

[2] In the March 21, 2024 motion, Defendant also argued that the admission of three incidents of uncharged firearms' possession was improper. (ECF No. 116 at 2–8.) The Court rejected this argument, (see ECF No. 121 at 10–16), and Defendant does not seek reconsideration of that part of the Court's decision.

'very painful . . . agonizing' withdrawals, he also controlled all the money Amanda made, and even determined when and what she ate." (Id. at 18 (citing Tr. 620, 617–18).) The Court also cited Amanda's testimony "that McKen had sex with her even though she 'did not want to,'" that "she performed sex acts she was uncomfortable with because McKen demanded it," and that, "due to McKen's acts, she had 'no other choice' but to continue working for him." (Id. (citing Tr. 608–631).)

With respect to Ella, the Court concluded that the trial record was "replete with evidence that McKen coerced Ella into performing commercial sex acts," citing, among other things, Ella's testimony that McKen frequently used physical violence against her, that he "threatened [her] with guns on multiple occasions," (id. (citing Tr. 136, 168)), and that he "controlled [her] finances and exploited this situation to maintain control over her," (id. (citing Tr. 204, 173).) The Court also rejected Defendant's arguments that Ella was not coerced because she: (1) left and returned on multiple occasions; (2) had been a prostitute before meeting the Defendant; and (3) continued to engage in sex work for financial and other motives. The Court reasoned that Defendant's arguments went to "the credibility of the victims' testimony – not at the sufficiency of the evidence," and the jury "heard this testimony and was free to consider it in its deliberations." (Id. at 20.)

On April 2, 2026, Defendant filed the instant motion, urging the Court to reconsider its decision on his Rule 29 and 33 motion in light of a recent Eastern District decision on a Rule 29 and Rule 33 motion in United States v. Chen, No. 22-cr-158, 2025 WL 2271484 (E.D.N.Y. July 7, 2025).[3] (See Amended Mot at 2.) In the motion, Defendant argues that reconsideration is warranted because Judge Vitaliano's decision in Chen, which granted the defendant's Rule 29

[3] The decision in Chen is currently on appeal to the Second Circuit; oral arguments were held on September 23, 2026. See United States v. Chen, No. 25-1916 (2d. Cir. 2025).

challenge to his sex trafficking conspiracy conviction, "clarified a previously unraised and unconsidered legal analysis in this case" by "requir[ing] a nexus between a defendant's allegedly coercive conduct and causing the recipient by the allegedly coercive conduct to participate in commercial sex acts." (Id. at 5.) According to the Defendant, applying Chen, the trial record in his case "does not contain evidence to support a finding . . . that Mr. McKen caused, or intended any of the testified-to 'coercive' conduct to cause the complainants to commit commercial sex acts, nor that those complainants believed that such testified-to conduct caused them to commit such commercial sex acts." (Id.) He also argues that the Court's jury instructions failed to adequately instruct the jury on the element of causality. (Id. at 10–11.)

The Government opposes Defendant's motion. Initially, the Government argues that there is no basis for reconsideration because the Defendant merely repeats the same arguments he made in his first motion, and Chen is not controlling and is in any event factually distinguishable. (Gov. Opp. at 5.) The Government also asserts that, regardless, Defendant's Rule 29 and 33 arguments fail on the merits, as the evidence underlying his convictions was sufficient and the jury was properly instructed as to causality. (Id. at 9–28.)

As explained below, Defendant cannot meet the strict standard for reconsideration and, in any event, all his arguments also fail on the merits.

## II. DISCUSSION

### A. Motion for Reconsideration

"Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources." United States v. Young, No. 06-cr-495, 2009 WL 10701764, at *4 (S.D.N.Y. Feb. 23, 2009) (citation omitted). While the Federal Rules of Criminal Procedure do not specifically address motions for reconsideration, such motions "have traditionally been allowed within the Second Circuit." United

States v. Crumble, No. 18-cr-32, 2023 WL 3220983, at *2 (E.D.N.Y. May 3, 2023) (quoting United States v. Yannotti, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006)). Local Criminal Rule 49.1(d) provides that any motion for reconsideration must be filed and served within 14 days of the order on the original motion. See E.D.N.Y. Crim. R. 49.1(d). "'The standards for reconsideration among the civil and criminal rules are largely the same.'" United States v. Harris, No. 18-cr-628, 2021 WL 848865, at *1 (E.D.N.Y. Mar. 5, 2021) (quoting United States v. Daugerdas, No. 09-cr-581, 2020 WL 4931988, at *2 (S.D.N.Y. Aug. 18, 2020) (internal quotation marks and citation omitted)). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Montblanc-Simplo GmbH v. Colibri Corp., 739 F. Supp. 2d 143, 147 (E.D.N.Y. 2010) (quoting Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)). "A motion for reconsideration must be denied if the moving party 'merely offers substantially the same arguments he offered on the original motion.'" Suarez v. United States, No. 17-cv-133, 2022 WL 1078436, at *2 (S.D.N.Y. Apr. 11, 2022) (quoting Mikol v. Barnhart, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008)).

### B. Rule 29 and Rule 33 Standard

Rule 29 provides that after the close of the Government's evidence in a criminal trial, and on the defendant's motion, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). As explained below, "[a] defendant challenging the sufficiency of the evidence 'bears a heavy burden,' and 'the

standard of review is exceedingly deferential.'" United States v. Martoma, 894 F.3d 64, 72 (2d Cir. 2017) (quoting United States v. Coplan, 703 F.3d 46, 62 (2d Cir. 2012).

"Only if 'the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt' may the court enter a judgment of acquittal." United States v. Jabar, 19 F.4th 66, 76 (2d Cir. 2021) (quoting United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999)). The Court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." Id. (quoting Martoma, 894 F.3d at 72); see United States v. White, 7 F.4th 90, 98 (2d Cir. 2021) (similar). "As long as the evidence 'would suffice to convince any rational trier of fact that the crime charged has been proven beyond a reasonable doubt, then the conviction must stand.'" Jabar, 19 F.4th at 76 (quoting United States v. D'Amato, 39 F.3d 1249, 1256 (2d Cir. 1994)); see White, 7 F.4th at 98 (similar). The evidence must be evaluated "in conjunction" rather than by "piecemeal or in isolation." United States v. Klein, 913 F.3d 73, 78 (2d Cir. 2019); see also Guadagna, 183 F.3d at 130 (noting that "each fact may gain color from others").

In that analysis, "the court must be careful not to usurp the role of the jury." Jabar, 19 F.4th at 76. "'Rule 29 does not provide the trial court with an opportunity to substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury.' Thus, where 'either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter.'" Id. (quoting Guadagna, 183 F.3d at 129) (internal alterations omitted).

Under Rule 33, a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Rule 33 motions are 'granted only in extraordinary

circumstances, and are committed to the trial court's discretion.'" United States v. Escalera, 957 F.3d 122, 137 (2d Cir. 2020) (quoting United States v. Torres, 128 F.3d 38, 48 (2d Cir. 1997)); see United States v. Landesman, 17 F.4th 298, 330 (2d Cir. 2021) (similar). "In evaluating a Rule 33 motion, the court must 'examine the entire case, take into account all facts and circumstances, and make an objective evaluation,' keeping in mind that the 'ultimate test' for such a motion is 'whether letting a guilty verdict stand would be a manifest injustice.'" United States v. Alston, 899 F.3d 135, 146 (2d Cir. 2018) (quoting United States v. Aguiar, 737 F.3d 251, 264 (2d Cir. 2013)); see United States v. McPartland, 81 F.4th 101, 123 (2d Cir. 2023) (similar).

In deciding a Rule 33 motion, the Court must "strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury." United States v. Peters, 843 F. App'x 369, 374 (2d Cir. 2021) (quoting United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001)) (internal alterations omitted). For that reason, "[a] district court may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be manifest injustice to let the verdict stand." Landesman, 17 F.4th at 330 (quoting United States v. Archer, 977 F.3d 181, 188 (2d Cir. 2020)); see also United States v. Sanchez, 969 F.2d 1409, 1413–15 (2d Cir. 1992). Ultimately, under Rule 33, "'[t]he defendant bears the burden of proving that he is entitled to a new trial,' and in order to grant a new trial, 'a district court must find that there is a real concern that an innocent person may have been convicted.'" United States v. Hunter, 32 F.4th 22, 30 (2d Cir. 2022) (quoting United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009)); see McPartland, 81 F.4th at 123 (similar).

### C. Defendant Presents No Basis for Reconsideration

Defendant has presented no argument—and the Court finds no basis—that warrants reconsideration of its prior denial of Defendant's Rule 29 and Rule 33 motion.

Chen does not present a basis for reconsideration for three reasons. First, because Chen is a district court case, it is not a "controlling decision" for purposes of reconsideration. See, e.g., United States v. Corbett, No. 20-cr-213, 2020 WL 5802315, at *2 (E.D.N.Y. Sept. 29, 2020) ("[T]he decisions of the Court's learned colleagues in the district are not 'controlling decisions,' and certainly are not decisions the court 'overlooked.'" (quoting Shrader, 70 F.3d at 257)); see also Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (cleaned up).

Second, Chen did not create any new law; it merely applied established precedent to the specific and unique facts at issue in Chen. See Chen, 2025 WL 2271484, at *3 (explaining that although causality "is not broken out as a separate element," it is "still seen as essential, in Sand's Modern Federal Jury Instructions") (citing David v. Weinstein Co., 431 F. Supp. 3d 290, 302-03 (S.D.N.Y. 2019); United States v. Corley, 679 F. App'x 1, 7 (2d Cir. 2017)). Applying this precedent concerning causation, Judge Vitaliano found that there was no evidence that "would enable a reasonable juror to find that the government had proved the causality element of a sex trafficking charge." Id. at *4. Reconsideration is not warranted where, as here, the cited caselaw does not make new law, but "merely applie[s] settled law . . . to a particular set of facts." Allen v. City of New York, No. 19-cv-3786, 2023 WL 171402, at *1 (S.D.N.Y. Jan. 12, 2023); see id. (explaining that the movants' proposed basis for reconsideration "did not change controlling law, (nor could it have, as it was a district court decision that is not binding on this Court); it merely applied settled law—the settled law that the Court applied in its prior Memorandum Opinion and Order—to a particular set of facts") (cleaned up).

Third, Defendant's arguments, although framed in terms of "causation," largely rehash arguments he made in his initial motion, in which he contended that the Government failed to

present sufficient evidence "to establish the objective coercion" of Amanda and Ella. (ECF No. 116 at 12.) Here, as in his initial motion, he argues that both women "entered into relationships with [him] voluntarily for their own benefit and reasons," and that the trial evidence failed to show his "periodically volatile or abusive" behavior was "designed to cause the complainants to commit commercial sex acts, nor that he knew his conduct would have that effect." (Amended Mot. at 13; see, e.g., ECF No. 116 at 13 (arguing that both women "commenced [the venture] on consent," were "free to leave all along," "were not truly coerced into working in the sex trade, and that they did so for financial and other motives rather than because Mr. McKen forced them").) "[I]nsofar as petitioner's motion merely rehashes his previous arguments, a motion for reconsideration is not an additional opportunity to reargue claims previously denied." See United States v. Sessa, No. 92-cr-351, 2011 WL 867175, at *1 (E.D.N.Y. Mar. 8, 2011)).

Defendant cannot meet the strict standard for reconsideration. Moreover, as explained below, even if Defendant could meet this standard, his arguments also fail on the merits.

### D. The Evidence Was Sufficient to Convict Defendant for Sex Trafficking (Counts III and IV)

Defendant contends that the Government "failed to establish beyond a reasonable doubt, as a matter of law, the essential elements of 1) coercion and 2) causality, i.e., that Mr. McKen caused, or intended any of his alleged actions to cause, Amanda and Ella specifically to commit commercial sex acts[.]" (Amended Mot. at 2.) Those arguments fail. There was ample evidence before the jury that the Defendant caused Amanda and Ella to engage in and continue to engage in commercial sex acts for his benefit (and that he knew and intended that coercion would be used to cause them to engage in such acts).

#### 1. Sex Trafficking Under Federal Law

The crime of sex trafficking under federal law requires that a defendant knowingly recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any

means a person, "knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a) (emphasis added).

18 U.S.C. § 1591(e)(2) defines "coercion" as: (A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process. See 18 U.S.C. § 1591(a).

**2. Analysis**

Defendant argues that, in order to prove him guilty, the Government had to prove that he caused, and knew (or intended) his actions would cause, Amanda and Ella to commit commercial sex acts. According to Defendant, the evidence at trial was insufficient to meet this standard. This argument fails because the evidence was sufficient for a reasonable jury to find both that: (1) Defendant knew and intended that his coercive and fraudulent conduct would be used to cause Amanda and Ella to engage in commercial sex acts; and (2) Defendant's coercive and fraudulent conduct did, in fact, cause Amanda and Ella to commit commercial sex acts.[4]

[4] At some points in his brief, Defendant asserts that the Government had to prove that he "caused, or intended any of his alleged actions to cause, Amanda and Ella specifically to commit commercial sex acts," (ECF No. 2 (ECF No. 135 at 2 (emphasis added).) At other points, Defendant maintains that the Government must prove both that: "Mr. McKen's conduct caused the complainants to engage in the commercial sex trade or in specific commercial sex acts they would not otherwise have engaged in"; and (2) "that Mr. McKen knew [or "intended"] that his conduct would result in the decision of the complainants to engage in commercial sex acts." (Id. at 12; see also id. (identifying "intended" rather than "knew" as relevant standard); cf. id. at 11 (articulating yet another formulation of Defendant's proposed standard: "the Court was required to instruct the jury that the prosecution needed to prove beyond a reasonable doubt that Mr. McKen knew or recklessly disregarded the fact that force, fraud, or coercion would cause individuals to engage in commercial sex and that Mr. McKen knew or should have known that his conduct is what would cause the decision to engage in commercial sex acts").

To the extent that Defendant insists that the Government was required to prove that the alleged coercive or fraudulent conduct did, in fact, cause the victims to engage in commercial sex acts, courts, including the Second Circuit, have rejected such an interpretation of § 1591(a). See United States v. Alvarez, 601 F. App'x 16, 18 (2d Cir. 2015) (rejecting argument that "but–for causation is a required element" of § 1591(a) and explaining that "[t]he sex trafficking statute criminalizes certain means when they are 'used to cause' an act, and thus is concerned with the means and not with the result"); United States v. Maynes, 880 F.3d 110, 114 (4th Cir. 2018) (rejecting defendant's proposed instruction that "might have led a jury to believe that the fraud must in fact have caused a commercial sex act" because "[t]here is no requirement that a commercial sex act actually occurred, much less that fraud in fact caused the commercial sex act"); see also United States v. Corley, 679 F. App'x 1, 7 (2d Cir. 2017) ("[T]he plain meaning of

Both Amanda and Ella provided testimony that the Defendant used coercive behavior to maintain control over them, and a jury could find that his behavior caused them (and was intended to cause them) to continue to engage in sex acts against their will.

As for Amanda, she testified, among other things, that during her time with the Defendant: she "wasn't allowed to hold on to" her own drugs, "[t]hey were completely in his control," and "basically he would give it to [her] and he would give [her] how much when he felt like it." (Trial Tr. Nov. 7, 2024 at 606.) Defendant would withhold drugs from Amanda "to the point where there was times where I was literally crying and begging him" for drugs, as her withdrawals became more severe. (Id. at 607.) Amanda testified that Defendant withheld drugs from her to force her to work, explaining that "I think it was if you work more, you know, if you make me more money . . . I'll take better care of you maybe type of thing."[5] (Id. at 624; see id. at 626 (stating that "he yelled at me and he said, you might be addicted to opiates but I'm addicted to money . . . you need to make me more money.").) She also testified that that "he would yell at me if I hadn't seen that many dates," (id. at 617); and that, although she had worked as prostitute before she met the Defendant, when she was with him, she "wasn't choosing to do what [she] was doing," and that "doing it with him was different because it just – it would go on, and on, and on." (Id. at 618–

---

[Section 1591(a)] . . . requires only that the defendant 'know' that the victim 'will be caused' to engage in a commercial sex act; the statute does not require that an actual commercial sex act have occurred.").

It is unnecessary to address this issue in any further depth because, as explained herein, the evidence at trial was sufficient for a reasonable jury to find both that Defendant's coercion caused Amanda and Ella to commit commercial sex acts and that Defendant knew (and intended) that coercion would be used to cause them to commit commercial sex acts. Accordingly, the evidence was sufficient to convict Defendant under all of Defendant's proffered interpretations of the statute.

[5] Defendant highlights the fact that, in making this statement, Amanda added that "I'm not a hundred percent sure." (Id. at 624.) Defendant also contends that this statement is mere speculation and that he "never indicated his words or actions" that the drugs she received would depend on how much she worked. (ECF No. 135 at 17.) This was relevant admissible testimony and, when all the evidence is considered, it is sufficient to establish that Defendant knew and intended that his withholding of the drugs would be used to cause Amanda to engage in commercial sex acts. The different inferences Defendant seeks to draw from this statement and other evidence were for the jury to resolve.

619.) Defendant also required Amanda to abide by strict rules (including forcing her to tell him everywhere she went) and controlled her all of money and her meals. (Tr. 607–08, 612, 617–18, 620, 625.) She also testified that McKen had sex with her even when she "did not want to," and she performed sex acts she was uncomfortable with, including anal sex, because he told her to. (Tr. 610, 615.)

Contrary to Defendant's claims, Amanda's testimony was more than sufficient to allow a reasonable jury to conclude that Defendant threatened and exploited Amanda's drug addiction and financial situation to coerce her into prostitution.

Additionally, as the Government points out, Defendant also used fraud to coerce Amanda to engage in commercial sex acts (and intended to do so) by promising her an apartment, car, and a "lavish lifestyle," (Tr. 619). See Johnson, No. 22-CR-0494, 2026 WL 913118, at *10 (finding that the defendant's promises, including, inter alia, "that they were going to 'build [their] empire,' 'get a place,' and 'be together'" were sufficient, along with all the other evidence in the record, "for a rational jury to find the [d]efendant additionally used fraud against Dawn to cause her to engage in commercial sex acts").

A jury could find, based on all this evidence, that: (1) Defendant's coercive and fraudulent conduct caused Amanda to commit commercial sex acts; and (2) Defendant knew and intended that such conduct would be used to cause Amanda to engage in commercial sex acts. See United States v. Shine, No. 20-314, 2022 WL 761520, at *2 (2d Cir. Mar. 14, 2022) (rejecting defendant's sufficiency argument because defendant "exploited victims' fear of homelessness, withdrawal, and violence to compel them to engage in commercial sex acts when they otherwise would not have done so"); United States v. Johnson, No. 22-CR-0494, 2026 WL 913118, at *11 (E.D.N.Y. Apr. 3, 2026) (finding evidence sufficient to support sex trafficking conviction where the defendant "exploited [the victim's] drug addiction and fear of withdrawal to coerce her into prostitution").

Defendant's arguments all rely on alternative inferences the jury could have made—for example, he contends that the argument during which he yelled at Amanda to see more dates was merely an argument "about doing more prostitution," and did not coerce her or "cause her to perform commercial sex acts as a result of the argument." (Amended Mot. at 18.) However, such contentions cannot prevail on a sufficiency of the evidence challenge when the jury could draw different inferences and reach a different conclusion. Cf. United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998) ("We defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence."); United States v. Aquart, 912 F.3d 1, 44 (2d Cir. 2018) ("[I]t is the task of the jury, not the court, to choose among competing inferences.") (cleaned up).

As for Ella, her testimony also supported a causal link between Defendant's conduct and her continued work for him. While Defendant insists that "any testified-to abusive language and conduct was the product of an open relationship and consensual cohabitation," the jury was not required to accept that interpretation of Ella's testimony. (Amended Mot. at 21.) Among other things, Ella testified that Defendant set strict rules for her and she "was scared to see the outcome if [she] didn't follow the rules." (Tr. at 59.) Ella also testified that she could not go "out of pocket," was afraid to be disloyal, and feared the Defendant "coming to find [her]."[6] (Id. at 58, 140.) During a fight between Ella and Defendant in which Defendant held a gun to her head, she told Defendant that she "was going to leave him and he told [her] if [she] ever left him, he would kill

[6] The instant case has some parallels to United States v. Purcell, 967 F.3d 159, 194 (2d Cir. 2020), where the Second Circuit observed that:

> Though the threat of harm if Wood failed to conform to Purcell's expectations was never made explicit, his actions were imbued with a palpable threatening subtext. When a defendant demands that a putative trafficking victim abide by an especially restrictive and menacing code of conduct, a reasonable jury may fairly conclude that it was objectively reasonable for the putative victim to acquiesce out of fear, even when the consequence of noncompliance remains unspoken and unspecified. Moreover, Purcell's pattern of behavior suggests that he acted with an intention to intimidate, and therefore with a knowledge that his conduct was likely to cause Wood to engage in commercial sex out of fear.

[her]." (Id. at 137; see also Tr. 136, 168, 240.) While Defendant contends that this threat only concerned their personal romantic relationship and cohabitation, the jury was not required to adopt this blinkered view of the evidence and the relationship between Amanda and Defendant, who was also her pimp. In addition to such threats, Defendant also frequently used physical violence against Ella. (See Tr. 135 ("I remember the time that I had an abortion and he choked me. I remember the time that he choked me to where I blacked out and a handful more."); id. at 133 ("I remember building a bed when we first moved in here, and [the Defendant] got mad when we were building the bed and ended up hitting me."); id. at 134 ("Whether it was hitting me in my face, choking me, slamming me to the ground, it was consistent throughout the two years that I was with him.").) Contrary to Defendant's claims, when all the evidence in the record is considered, it was more than sufficient to establish that the Defendant's conduct was intended to coerce—and also did in fact coerce—Ella to continue to engage in commercial sex acts with him, rather than constituting mere "domestic disputes" devoid of such coercive intent. (Amended Mot. at 24.)

Similar to Amanda, there is also evidence from which a jury could reasonably find that Defendant also used fraud to coerce Ella to engage in commercial sex acts (and intended to do so) by luring her in with promises of giving her "an elevated lifestyle," "[a] home, a business," and "success later down the road that wasn't prostitution." (Tr. 54; see Tr. 51–52; see also Tr. 194–95 ("He made promises to be successful outside of prostitution as far as businesses. The promise was to get out of prostitution, not to remain and do it for the rest of my life."); Tr. 54, 176 (testifying that she received "none of the things he promised" her other than a home rented in her name).) A reasonable jury could have also found that this constituted fraud and was an additional basis to convict Defendant of sex trafficking. See Johnson, 2026 WL 913118, at *10.

Defendant's arguments fail. Although Defendant again points out, as he did in his first motion, that Amanda and Ella left on multiple occasions and continued to engage in sex work with

others, that evidence does not necessarily establish that his conduct was not coercive or that it did not cause them to perform sex acts for him against their will. (See, e.g., ECF 121 at 120 (explaining that the fact that Ella "left and returned" on multiple occasions went to the credibility of her testimony rather than to the sufficiency of the evidence).) Similarly, the fact that victims were already engaged in sex work before meeting Defendant does not mandate acquittal here. As Chen recognized, "[e]ven if force was not used to force the victims to enter into prostitution in the first place, it can sustain a conviction if it caused them to engage in particular commercial sex acts." 2025 WL 2271484, at *4. Defendant also argues that "based upon experience in previous criminal activities," the women "were subjectively hardened to his conduct and words and less likely to believe as a result of such conduct and words that failure to perform a commercial sex act would result in serious harm to them or their physical restraint." (Reply Br. at 15.) Again, this argument concerns competing inferences and factual disputes that were for the jury to resolve. See, e.g., Johnson, 2026 WL 913118, at *9 (finding that the evidence was sufficient for a rational jury to find the defendant coerced the victim into performing commercial sex acts even though the victim was a prostitute prior to meeting the defendant where the victim testified, among other things, that the defendant "would intentionally withhold drugs" from her, that "if she was too high on drugs, she 'had no choice' and 'had to make money' and 'had to work' to pay" the defendant, and "testified of multiple instances where [the defendant] used physical and sexual violence against her, including forcing her to have sex with him in front of other girls, which she did unwillingly").

The Court denies Defendant's Rule 29 motion.[7]

---

[7] The Court also notes that there are fundamental differences between the facts here and the facts in Chen—the allegedly critical case that Defendant insists necessitates reconsideration.

The defendant in Chen was "a leader in a nationwide commercial sex enterprise that brutally assaulted women employed by competing rings as a means of blocking the rival prostitution rings from encroaching on its territory." Chen, 2025 WL 2271484, at *3. In granting the defendant's Rule 29 motion to vacate his sex trafficking conspiracy conviction, Judge Vitaliano found that, although the Government presented a "boatload of evidence" that the defendant and his assailants beat their organization's prostitutes to keep them from working for rival organizations, "[n]o evidence at trial showed any of the victims of the organization's assaults and robberies felt compelled to continue

The Court also rejects Defendant's related challenges under Rule 33. The Court found the testimony of both Amanda and Ella to be credible. Based on their testimony and the entire record, the Court finds that: (1) Defendant's coercive and fraudulent conduct caused Amanda and Ella to commit commercial sex acts; and (2) Defendant knew and intended that such coercion and fraud would be used to cause them to engage in such acts. The verdict here was not a manifest injustice and the Court does not have "a real concern that an innocent person may have been convicted." Aguiar, 737 F.3d at 264.

## II. The Jury Was Properly Instructed as to Causality

Finally, Defendant argues that the Court's jury instruction failed to include an adequate explanation as to "the requisite nexus between the testified-to conduct and the causation of commercial sex acts" by Amanda and Ella. (Amended Mot. at 10.) Specifically, he argues that "the Court was required to instruct the jury that the prosecution needed to prove beyond a reasonable doubt that Mr. McKen knew or recklessly disregarded the fact that force, fraud, or coercion would cause individuals to engage in commercial sex and that Mr. McKen knew or should

---

working as a sex worker due to the beatings, either for the organization itself or elsewhere." Id. at *6. In making that determination, Judge Vitaliano found three deficiencies particularly relevant: first, "no victim, cooperator or not, was ever called to testify about anything that any member of the organization did or said which they believed it compelled them to perform commercial sex work against their will"; second, "[n]o evidence presented at trial suggest[ed] the organization wanted these women to engage in sex work after the assaults, or that the women felt pressured to do so"; and third, and critically, "[n]o evidence showed any of the women worked for the organization after being assaulted." Id.

As an initial matter, the Government has appealed Chen and vigorously argued on appeal that Chen was wrongly decided. However, even if the Second Circuit were to agree with Chen, the facts of Chen are clearly distinguishable. As explained in further detail above, both Amanda and Ella testified that Defendant used coercive behavior to maintain control over them and a jury could find that this coercion pressured them to engage in sex acts against their will and into continuing to work for him (and that Defendant knew and intended that such coercion would be used to cause them to engage in such sex acts). Additionally, unlike the women in Chen, both Amanda and Ella continued to work for Defendant after his coercive behavior, which a jury could find that geared toward maintaining control over them and coercing them into continuing to perform sex work for Defendant. Therefore, the causal link found missing in Chen—where the assaults were merely used to keep the women from working for rival organizations but "not to force them to keep working for the organization"—is not absent here. Id. at *4. In the instant case, a jury could find that Defendant's coercive and threatening behavior was intended to cause, and resulted in, Amanda and Ella continuing to engage in commercial sex acts for his benefit.

have known that his conduct is what would cause the decision to engage in commercial sex acts." (Id. at 11.)

As an initial matter, Defendant's claim is unpreserved because he failed to object to the jury instructions on this ground at trial. He offers no justification for failing to object at trial, nor any reason for raising this argument now rather than in his initial Rule 29 and 33 motion. See, e.g., Force v. Facebook, Inc., 304 F. Supp. 3d 315, 320 (E.D.N.Y. 2018) (denying motion for reconsideration in part because "plaintiffs provided no reason why they could not have presented such arguments in their initial briefing, and such new arguments have no place in a motion for reconsideration.") (cleaned up). Moreover, the Chen decision does not address the question of jury instructions at all, and Defendant does not identify any other intervening change of law or controlling decision that would make this argument proper on a reconsideration motion.

Even assuming arguendo that the Court should entertain this belated objection, an "unpreserved objection to a jury instruction" is only reviewed "for plain error." United States v. Hunt, 82 F.4th 129, 138 (2d Cir. 2023). Defendant was required to inform the court, at trial, "of [his] specific objection and the grounds for the objection." Fed. R. Crim. P. 30(d). When plain error review applies, the Second Circuit considers: "whether '(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" United States v. Miller, 954 F.3d 551, 557–58 (2d Cir. 2020) (quoting United States v. Nouri, 711 F.3d 129, 138 (2d Cir. 2013)).

Defendant cannot establish that the Court's instruction was plainly erroneous (or contained any error at all). The Court instructed the jury that the second element of sex trafficking required "that the defendant knew or recklessly disregarded the fact that force, the threat of force, fraud, or coercion would be used to cause such person to engage in a commercial sex act." (ECF No. 90 at

24.) This instruction accurately tracks the statutory language. See 18 U.S.C. § 1591(a) (requiring that "knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act"). The Court also referred to the requirement of causation elsewhere in the jury charge, and repeated the indictment language, which also accurately reflected the element of causation. (See id. at 27, 29, 30, 32 (restating the causation requirement); id. at 34, 36 (reciting the indictment language requiring that the defendant act in "knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion, . . . and a combination of such means, would be used to cause [the victim] to engage in one or more commercial sex acts").) Defendant cites no authority for his argument that the Court needed to include a further "developed explanation of that causal relationship and Mr. McKen's knowledge," and this Court has found none.[8] Indeed, in United States v. Graham, the Second Circuit upheld an instruction that was even less specific about causation, further undermining Defendant's argument that the Court needed to provide a more developed instruction on causation here. 707 F. App'x 23, 27 (2d Cir. 2017) (upholding an instruction that "charged the jury to determine whether [the defendant] 'knew or was in reckless disregard of the fact that force, threats of force, fraud or coercion would be used with respect to' the victims and that they 'would engage in a commercial sex act,'" referenced causation elsewhere in the charge, "including in its recitation of the indictment and of the statute itself"). Defendant's challenge to the Court's jury charge therefore fails.

---

[8] Defendant also argues, in passing, that the Court's instruction failed to "include any explanation as to the requisite scienter, specifically that the prosecution would need to prove that Mr. McKen knew that his conduct would cause the commission of commercial sex acts," (Amended Mot. at 11.) In support, Defendant cites a Seventh Circuit case, United States v. Sawyer, 733 F.3d 228, 229–230 (7th Cir. 2013). In Sawyer, the Seventh Circuit rejected the defendant's argument that the word "knowingly" in section 1591(a) applied to the section's "interstate commerce" clause, reasoning that "'knowingly' appears in the introductory portion of section 1591(a) simply to supply the mens rea for both paragraphs (a)(1) and (a)(2)." Id. at 230. Defendant does not explain why this statement in Sawyer is instructive in this context or required the Court to include additional instruction on the "knowledge of causality" requirement. In any event, contrary to Defendant's claims, the Court's instruction adequately explained that the prosecution had to prove that the Defendant knew or recklessly disregarded the fact his conduct would cause the commission of commercial sex acts, not merely that he knowingly engaged in the conduct.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for reconsideration of his Rule 29 and Rule 33 motion is DENIED.

**SO ORDERED.**

Dated: October 27, 2026
Central Islip, New York

/s/ JMA

JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE